**COOK OIL COMPANY, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. CV–95–A–206–E.

United States District Court,
M.D. Alabama,
Eastern Division.

March 20, 1996.

Peter M. Crofton, Harry V. Lamon, Allen Buckley, Atlanta, GA, for plaintiff.

Leura J. Garrett, Montgomery, AL, Cynthia L. Stier, Washington, DC, for defendant.

## MEMORANDUM OPINION AND ORDER

ALBRITTON, District Judge.

### INTRODUCTION

This cause comes before the court on cross motions for summary judgment in a dispute over a corporate taxpayer's entitlement to a refund. The plaintiff, Cook Oil Company, Inc., ("Plaintiff") moves for summary judgment on its claim that excise taxes were erroneously assessed against it and should be refunded. The defendant, United States of America, ("Government") argues in its motion for summary judgment not only that the Plaintiff was properly taxed, but also that the Plaintiff lacks standing to sue for the refund, precluding the court's exercise of subject matter jurisdiction over this controversy. Even though the Government refers to its motion as one for summary judgment, the court construes the government's motion as two separate and distinct motions: a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) and a motion for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons set out below, the court finds that the Plaintiff has standing to sue for the refund, but is not entitled to the refund because the Plaintiff was properly taxed.

## STANDARD FOR RULE 12(B)(1) MOTION TO DISMISS

■ The Eleventh Circuit divides attacks on subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) into two forms: "facial attacks" and "factual attacks." Facial attacks on the complaint "require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir.1990) (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.1980)) (brackets omitted). Factual attacks, on the other hand, challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.*

■ When assessing the factual basis for jurisdiction, a court's authority to weigh conflicting evidence and make its own findings of fact depends on whether the court's findings would implicate the merits of a substantive claim in the lawsuit. If the facts necessary to sustain the court's jurisdiction have no relevance to the merits of any substantive claim, the Eleventh Circuit directs as follows:

> [T]he trial court may proceed as it never could under 12(b)(6) or Fed.R.Civ.P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Lawrence*, 919 F.2d at 1529 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977)).

■ On the other hand, the court may not weigh conflicting evidence and make factual findings pertaining to jurisdiction if doing so implicates the merits of a substantive claim in the lawsuit. If jurisdiction and a substantive claim are predicated in whole or in part on the existence of the same fact, the Eleventh Circuit directs that the court may not find this fact, but instead must assume jurisdiction and proceed to the merits:

> The proper course of action for the district court ... is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case.... Judicial economy is best promoted when the existence of a federal right is directly reached and, where no claim is found to exist, the case is dismissed on the merits. This refusal to treat indirect attacks on the merits as Rule 12(b)(1) motions provides, moreover, a greater level of protection to the plaintiff who in truth is facing a challenge to the validity of his claim: the defendant is forced to proceed under Rule 12(b)(6) ... or Rule 56 ... both of which place great restrictions on the district court's discretion.... As a general rule a claim cannot be dismissed for lack of subject matter jurisdiction because of the absence of a federal cause of action. The exceptions to this rule are narrowly drawn, and are intended to allow jurisdictional dismissals only in those cases where the federal claim is clearly immaterial or insubstantial.

*Id.* (quoting *Williamson v. Tucker*, 645 F.2d 404, 415–16 (5th Cir.1981)) (brackets omitted). The court in *Williams* noted that, when this more stringent standard applies, a court should dismiss for lack of jurisdiction only those claims having "no plausible foundation" or that are "clearly foreclosed by a prior Supreme Court decision." *See* 645 F.2d at 416.

## ANALYSIS OF SUBJECT MATTER JURISDICTION

■ The Plaintiff argues that its claim for a refund of erroneously assessed taxes falls squarely within the subject matter jurisdiction of this court as provided in 28 U.S.C. § 1346. The pertinent portion of § 1346(a) states, "The district courts shall have original jurisdiction ... of ... [a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected,

... or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws."

The Government argues that only taxpayers have standing to seek a refund under § 1346, and the Plaintiff never paid the tax sought to be refunded. According to the Government, the Plaintiff seeks a refund of an excise tax on the sale of diesel fuel that was imposed on the Plaintiff's supplier, who, when selling diesel fuel to the Plaintiff, raised the price of this fuel to cover the cost of the tax. The Government argues that the Plaintiff did not "pay" the excise tax simply because the supplier included in the price of its fuel the cost of the tax. Consequently, since the legal incidence of the tax fell on the supplier of the fuel, and not the Plaintiff, the Plaintiff lacks standing to sue for a refund under § 1346.

The court views the Government's attack on jurisdiction as a factual attack controverting Plaintiff's allegation in its complaint that it paid the tax underlying its claim for a refund. *See* (Compl. ¶ 12.) Normally, as explained above, a court facing a factual attack on its jurisdiction must determine whether the facts relevant to jurisdiction also implicate the lawsuit's substantive merits. In this case, however, the court finds that undisputed facts establish the court's jurisdiction, rendering an examination of the interrelationship between jurisdiction and the lawsuit's substantive merits unnecessary.

## I. The Jurisdictional Facts

The parties agree to the following facts:[1]

In its tax returns the Plaintiff claimed tax credits[2] that the Internal Revenue Service ("IRS") later disallowed. The Plaintiff formally protested through the IRS's formal appeal procedure the IRS's decision to disallow these tax credits. Following an unsuccessful appeal, the Plaintiff paid taxes in the

amount demanded by the IRS in order to prevent a levy on its assets. The Plaintiff subsequently sued the Government under § 1346 for a refund of the taxes that it alleges to have been erroneously assessed.

## II. The Plaintiff's Standing

The court finds the Plaintiff to be the paradigmatic taxpayer for whom § 1346 was enacted. The Plaintiff disputed the amount of taxes that it owed the Government, followed the Government's appeal procedure, lost, paid the taxes the Government demanded, and subsequently sued for a refund. While some controversy exists concerning the standing of those not formally assessed a tax to sue for a refund under § 1346, *See United States v. Williams,* — U.S. —, 115 S.Ct. 1611, 131 L.Ed.2d 608 (1995) (holding that an unassessed party who paid tax under protest to remove federal lien from her property had standing to sue under § 1346), the standing of those who formally dispute their own tax assessment has never been questioned.

Furthermore, the Government's argument that the Plaintiff's supplier, not the Plaintiff, paid the excise taxes on the sale of the diesel fuel goes to the merits of the Plaintiff's claim—whether the Plaintiff deserves a refund or tax credit—rather than the Plaintiff's standing to challenge the amount of taxes it owes. The Plaintiff filed suit against the Government to recover a tax that it claims the Government erroneously forced it to pay—a suit that falls squarely within the jurisdiction conferred on this court by § 1346. The court does not find the Plaintiff's claim to be frivolous or insubstantial; therefore, the Government's motion to dismiss for lack of subject matter jurisdiction will be denied.

Exercising subject matter jurisdiction over this lawsuit, the court proceeds to examine

---

1. In its Opposition to Plaintiff's Motion for Summary Judgment, the Government asserts that "[f]or purposes of cross motions for summary judgment, the United States submits that the pertinent facts are set forth in [Plaintiff's] motion for summary judgment...." The Government later, in a supplemental brief, clarifies this statement to mean that it agrees with all facts submitted in the Plaintiff's motion for summary judg-

ment except those relating to the amount of money at issue. The following facts are taken from the Plaintiff's brief in support of its motion for summary judgment and thus are undisputed by the Government.

2. Tax credits constitute a direct reduction of taxes owed in the full amount of the credit.

the parties' cross motions for summary judgment.

## STANDARD FOR SUMMARY JUDGMENT

▮▮▮▮▮ Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The substantive law applicable to the case determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

[13, 14] The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. at 2553. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–23, 106 S.Ct. at 2552–53.

▮▮▮▮▮ Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S.Ct. at 2553. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–14.

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

## FACTS

The submissions before the court establish the following facts:

The Plaintiff is a wholesale distributor of petroleum products, including diesel fuel, and in 1993 purchased and sold diesel fuel. A federal statute imposed an excise tax on certain sales of diesel fuel in 1993, and the Plaintiff was a registered "producer" of diesel fuel for tax purposes in 1993.

During the calendar quarters ended March 31 and June 30, 1993, the Plaintiff made diesel fuel sales that were either taxable or nontaxable sales, depending on whether the purchaser planned to use the fuel for a tax-exempt purpose. In its tax returns for these quarters, the Plaintiff calculated the taxes it owed as follows: The Plaintiff first added together the taxes owed from taxable sales. Next, for all fuel purchased and later sold to tax-exempt users, the Plaintiff reduced its tax obligation by claiming tax credits to the extent the suppliers of the fuel included the cost of the excise tax in their price. The Plaintiff never passed this cost to its tax-exempt customers, believing that it could obtain a refund for this cost.

The IRS audited the Plaintiff's returns and disallowed the Plaintiff's tax credits. The Plaintiff formally appealed the IRS's decision, and the IRS refused to change its position that the Plaintiff was not entitled to the claimed tax credits. The Plaintiff paid the taxes as assessed by the IRS to prevent a levy on its assets and then filed a claim for a refund in this court.

## ANALYSIS

▮▮▮ The Plaintiff argues that the statutes imposing the excise tax in 1993 clearly state that sales to certain defined users shall be free of the excise tax. Claiming to follow

this directive, the Plaintiff did not pass to exempt users that amount previously paid to its suppliers on account of the excise tax. The Plaintiff claims that this fuel should never have been taxed, it properly refused to pass the tax to exempt users, and it should therefore receive a refund of these taxes.

The Government responds that the statute imposes an excise tax on the "sale" of diesel fuel "by any producer," and thus the Plaintiff's suppliers paid the tax, not the Plaintiff. The fact that the Plaintiff may have borne the economic burden of the tax does not mean the Plaintiff paid the tax—the Plaintiff simply agreed to a price that the supplier fixed to cover many costs, including taxes. Furthermore, the Government notes that sales of diesel fuel to "producers" such as the Plaintiff are exempt from taxation, and thus the Plaintiff should have been able to purchase the fuel tax-free. For whatever reason, the Plaintiff's purchase price included the cost of the tax, and the Government asserts that the Plaintiff's only option at that point was to pass this cost to its customers by marking up the price of its fuel. In such a circumstance, the Government continues, Congress provided relief to the Plaintiff's tax-exempt customers by explicitly authorizing them to obtain a refund for the portion of their purchase price attributable to the imposition of excise taxes in the distribution chain. Conversely, no provision in the tax code provides wholesalers such as the Plaintiff a refund for the cost of taxes imposed at higher levels of the distribution chain.

To address the parties' arguments, the court looks to the statutory scheme that imposed a tax on the sale of diesel fuel in 1993.

### III. The Statutory Scheme Imposing an Excise Tax on the Sale of Diesel Fuel in 1993.

Section 4091(a) of the Internal Revenue Code ("IRC"), as in effect during the tax periods in question, imposes a tax on "the sale of any taxable fuel ... by any producer of a taxable fuel." 26 U.S.C.A. § 4091(a) (West 1989) (amended 1993). The term "taxable fuel" includes diesel fuel. 26 U.S.C.A. § 4092(a)(1)(A) (West 1989) (amended 1993). The term "producer" includes any wholesale distributor of a taxable fuel who elects to register under IRC § 4101 with respect to the diesel fuel tax imposed under IRC § 4091. 26 U.S.C.A. § 4092(b) (West 1989) (amended 1993).

The tax imposed by IRC § 4091 does not apply to two types of diesel fuel sales: First, IRC § 4093(b) states, "Under regulations prescribed by the Secretary, the tax imposed by section 4091 shall not apply in the case of sales of a taxable fuel to a producer of such fuel." 26 U.S.C.A. § 4093(b) (West 1989) (amended 1993). Second, IRC § 4093(c)(1) states, "No tax shall be imposed by section 4091 on fuel sold by a producer or importer for use by the purchaser in a nontaxable use (as defined in section 6427(1)(2)) or a use described in section 6427(b)(1)." 26 U.S.C.A. § 4093(c)(1) (West 1989) (amended 1993).

The taxing scheme in place in 1993 provided to certain fuel purchasers a limited right to a tax refund: "[I]f any fuel on which tax has been imposed by section 4091 is used by any person in a nontaxable use, the Secretary shall pay (without interest) to the ultimate purchaser of such fuel an amount equal to the aggregate amount of tax imposed on such fuel under section 4091." 26 U.S.C.A. § 6427(*l*)(1) (West 1989) (amended 1993).

### IV. The Plaintiff's Entitlement to a Refund

 The Plaintiff relies on the legislative history of these various statutes to support its strained reading of what the court perceives to be unambiguous, straightforward statutory language. Looking to this statutory language, the court is guided by the longstanding rules of statutory construction in this circuit:

[T]here is no need to refer to the legislative history where the statutory language is clear. The plain words and meaning of a statute cannot be overcome by a legislative history which, through strained processes of deduction from events of wholly ambiguous significance, may furnish dubious bases for inference in every direction.... This canon of construction has received consistent adherence in our decisions.... The court must give effect

to the plain and obvious meaning of the statute without reading in or reading out. *General Electric Co. v. Southern Construction Co.*, 383 F.2d 135, 139 n. 2, 139 (5th Cir.1967) (quotation marks omitted).[3] The plain words of the statutes recited above reveal the fallacy in the Plaintiff's argument.

IRC § 4091 imposes a tax on the "sale" of diesel fuel "by any producer." The language unequivocally imposes the tax on the "producer" who sells the fuel. Without exception, courts considering IRC § 4091 reach this same conclusion. *See, e.g., Valley Ice & Fuel Co., Inc. v. United States*, 30 F.3d 635, 636 (5th Cir.1994) (noting that an oil refiner, Exxon, was legally liable to pay the tax imposed by 26 U.S.C. § 4091 on fuel sales to a retailer); *Walsh Oil Co. v. United States*, 26 Cl.Ct. 426, 427 (1992) (holding that an intermediate oil company who purchased fuel subject to the IRC § 4091 tax was not the "person who paid the tax," but a "purchaser from that person").

Additionally, the Supreme Court of the United States has heard and rejected the Plaintiff's argument in a similar context involving an excise tax on the sale of gasoline. In *Gurley v. Rhoden*, 421 U.S. 200, 95 S.Ct. 1605, 44 L.Ed.2d 110 (1975), the Court considered whether the legal incidence of a federal excise tax imposed upon "gasoline sold by a producer" fell upon the seller of gasoline or its purchaser, who, practically speaking, paid the tax in the form of higher prices at the gas pump. The court found that the tax was imposed upon the seller, not the purchaser:

> The economic burden of taxes incident to the sale of merchandise is traditionally passed on to the purchasers of the merchandise. Therefore, the decision as to where the legal incidence of [the] tax falls

is not determined by the fact that petitioner, by increasing his pump prices in the amounts of the taxes, shifted the economic burden of the taxes from himself to the purchaser-consumer. The Court has laid to rest doubts on that score raised by such decisions as *Panhandle Oil Co. v. State of Mississippi ex rel Knox*, 277 U.S. 218 [48 S.Ct. 451, 72 L.Ed. 857] (1928); *Indian Motorcycle [Motocycle] Co. v. United States*, 283 U.S. 570 [51 S.Ct. 601, 75 L.Ed. 1277] (1931); and *Kern–Limerick, Inc. v. Scurlock*, 347 U.S. 110 [74 S.Ct. 403, 98 L.Ed. 546] (1954), at least under taxing schemes, as here, where neither statute required petitioner to pass the tax on to the purchaser-consumer.

*Gurley*, 421 U.S. at 204, 95 S.Ct. at 1609. The tax scheme governing this case does not require suppliers to pass the cost of the tax to the Plaintiff; therefore, according to *Gurley*, the statutes did not tax the Plaintiff when it purchased the diesel fuel.[4] The Plaintiff cannot obtain a refund from the Government if the Government never imposed a tax on the Plaintiff.

Alternatively, even if the Plaintiff suffered an indirect form of taxation, it is not entitled to a refund—only "ultimate purchasers" can obtain refunds under the tax scheme set out above. This court agrees with the Fifth Circuit, which states, "Although § 6427 does not define the term "ultimate purchaser," the plain meaning of that term is simply the purchaser in the stream of commerce who is intended to use the product himself—as opposed to a middleman who intended to resell the product." *Valley Ice & Fuel Co., Inc. v. United States*, 30 F.3d 635, 638 (5th Cir. 1994). Thus, the Plaintiff, as a wholesaler,

**3.** In *Bonner v. City of Prichard, Ala.* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit held as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

**4.** *Gurley* reveals that Plaintiff's reliance on *Colorado National Bank of Denver v. Bedford*, 310 U.S. 41, 60 S.Ct. 800, 84 L.Ed. 1067 (1940), is mistaken. In *Bedford*, the Court had to determine whether a state tax imposed on the sale of banking services was a tax on the nationally chartered bank, and hence illegal, or on its cus-

tomers. In deciding that the bank's customers, and not the bank itself, were taxed, the Court stated, "As the user directly furnishes the funds for the tax, not as an ultimate consumer with a transferred burden but by section 12 of the act as the responsible obligor, we conclude the tax is upon him not upon the bank." *Id.* at 52–53, 60 S.Ct. at 805. Thus, *Bedford* is distinguishable from the present case because the tax scheme there explicitly taxed the purchaser, while the tax scheme here does not.

**1564**

does not qualify as an "ultimate purchaser" entitled to a refund.

Finally, the Plaintiff argues that the legislative history behind several amendments to the tax scheme reveal a Congressional intent that exempt users purchase at a price unaffected by the excise tax, as opposed to paying the cost of excises taxes in the purchase price followed by a petition for a refund. According to the Plaintiff, without a refund, its only option will be to pass the cost of the tax to exempt users, which the Plaintiff insists is contrary to Congressional intent.

The Plaintiff correctly observes that, in the anomalous case presented here—where the Plaintiff, a registered "producer," did not purchase fuel tax-free—its only economical option under the Government's interpretation of the statutes is to pass the cost of the tax on to the exempt users. Yet the court is convinced that, in most cases, sales to "producers" will be tax-exempt. The tax scheme plainly allows the Plaintiff, as a registered producer, to purchase fuel tax-free and then resell the fuel tax-free to exempt users, who therefore pay a price unaffected by the excise tax. The court concludes that Congress implemented its intent with the plain meaning of the words it chose, and that here, as with most legislation, the plain meaning of the statutes and the congressional intent behind them merge harmoniously. Therefore, based on the plain statutory language recited above, as well as Supreme Court precedent interpreting similar language, this court finds that the Government's motion for summary judgment must be granted.

## CONCLUSION

For the reasons explained above, the court ORDERS that the Government's motion to dismiss for lack of subject matter jurisdiction is DENIED. The Government's motion for summary judgment is due to be granted, and a judgment in accordance with this opinion will be entered separately.